BOSCARINO v. BOSCARINO.

1. DIVORCE—RECONCILIATION—RELATIVES.

Decree denying divorce to plaintiff husband, a returned veteran, and denying separate maintenance to defendant wife, who has also been employed outside of the home, is affirmed, where it appears that plaintiff has sought reconciliation and such may be possible with less interference and more cooperation on the part of relatives on both sides of the family consisting of the parties and their twin children.

2. SAME—COSTS—APPEAL BY WIFE.

No costs are allowed upon affirmance of decree denying divorce to either party and wife appealed.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 9, 1952. (Docket No. 18, Calendar No. 45,351.) Decided May 16, 1952.

Bill by John E. Boscarino against Mary Jane Boscarino for divorce. Cross bill by defendant

---

REFERENCES FOR POINTS IN HEADNOTES

[1] As to the discretion of the court, see 17 Am Jur, Divorce and Separation §§ 26, 425.

against plaintiff for separate maintenance. Decree dismissing both bill and cross bill. Defendant appeals. Affirmed.

*James V. Bellanca,* for plaintiff.

*Anthony A. Vermeulen,* for defendant.

BUTZEL, J. John E. Boscarino, plaintiff and cross-defendant, filed a bill for divorce against Mary Jane Boscarino, defendant and cross-plaintiff. She in turn filed a cross bill for separate maintenance. The trial judge, after a hearing, dismissed both bill and cross bill. Defendant as cross-plaintiff appeals.

The parties were married in 1941, shortly before plaintiff was called into service. After his honorable discharge the parties moved to Detroit, where they lived for a time with defendant's parents. Defendant gave birth to twins on September 26, 1946. She was not in the best of physical condition and may still be in need of some surgery. The record does not indicate that this may have caused some emotional disturbance. Defendant had been working for a considerable period prior to the hearing.

The parties purchased a home in the suburbs of Detroit, but owing to the fact that plaintiff was working nights, and defendant with her small babies would be alone in the house, they moved back to the home of defendant's parents, the equity in the home was sold, and almost the entire proceeds were paid to defendant's brother to be used in the purchase of the latter's interest in a home he and plaintiff's father were purchasing.

On the return of the parties to the home of defendant's parents, there was considerable disagreement. This was partly due to the fact that plaintiff's sister had secured a divorce from defendant's brother, engendering much bad feeling among the

"in-laws." Plaintiff claims that defendant's father urged them to get out and into a home of their own. Defendant's mother, on the other hand, was not sympathetic, and plaintiff claimed she interfered to such an extent that he could not stand it any longer. He finally asked defendant to help establish an independent home but she refused. His emotional instability is shown by his bidding each member of the family an affectionate farewell and leaving the house. He has not returned, even to see the children.

Plaintiff gave defendant his last pay check, but when she called him 4 days after he left, he told her that she would have to go to court for any further support. This she did, and within 2 weeks he appeared before the domestic relations department of recorder's court, where he agreed to pay $25 per week towards the support of the family. Plaintiff testified that the reason he did not visit the children or wife was because of his marital troubles he had become almost a nervous wreck. He testified that defendant had told him that she would not leave her mother's home, that if he did not like it he should leave; that defendant's mother told him that if he left, she was going to see to it that he would not see the children.

Plaintiff appears to be an industrious man with no bad habits. He gave his pay check regularly to his wife, only taking a few dollars for his personal wants. Defendant also is a hard working woman. Evidently their troubles arose almost entirely from the interference of relatives on both sides of the family. It is true that plaintiff has no home to take his family to, but that is not an insurmountable difficulty. They have sufficient household furniture so as to furnish a rented home. We are satisfied on reading the record that the circuit judge was absolutely correct in holding:

"I don't feel that under all the circumstances in this case these parties should be allowed to separate. I think that they can get along if they will just give a little give and take to this proposition, * * * for the sake of these children, which is a tremendous responsibility, which they must have to account for some day—that I cannot in justice or conscience grant a divorce to either of the parties."

We might add that the "in-laws" involved herein have a grave responsibility toward the parties and their little children and can help much in bringing about a complete reconciliation, which plaintiff has sought a number of times but which defendant has refused.

The decree is affirmed. No costs.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.